1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10   GERALDO OJITO,                          Civil No.    09-2918 JM (POR)

11                          Petitioner,
                                            **REPORT AND RECOMMENDATION
12              v.                          ORDER DENYING PETITIONER'S
                                            PETITION FOR WRIT OF HABEAS
13   KEN CLARK, Warden,                     CORPUS**

14                          Respondent.

15

16                          **I. INTRODUCTION**

17          On December 28, 2009, Petitioner Geraldo Ojito ("Petitioner"), a state prisoner proceeding

18   *pro se* and *in forma pauperis*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §

19   2254.  (ECF No. 1.)  Petitioner raises the following grounds for relief: (1) the trial court's admission

20   of gang evidence denied him a fair trial in violation of his right to due process; (2) the trial court

21   "prejudicially erred" in admitting evidence of Petitioner's standoff with the San Diego Police

22   Department SWAT team; (3) Petitioner's conviction for aiding and abetting premeditated murder

23   was not supported by sufficient evidence; (4) Petitioner's joint trial with co-defendant Garcia

24   violated his Sixth Amendment right to confront and cross-examine witnesses; (5) the trial court's

25   admission of evidence of "wila" notes[1] violated state law and his Sixth Amendment right to confront

26   and cross-examine witnesses; and (6) the trial court's cumulative errors violated due process.  (Id. at

27   _____

28          [1] The California Court of Appeal defines "wila" as a slang term for a "note passed from a jail or prison inmate to
     another inmate."  (Lodgment 8 at 14 n. 14.)

1   7-14.)

2   On July 16, 2010, Respondent filed an Answer to Petitioner's Petition.  (ECF No. 9.)  On

3   September 27, 2010, Petitioner filed a Traverse.  (ECF No. 13.)  Based upon a review of the parties'

4   pleadings, and in accordance with Local Rule 72.1(d), this Court **RECOMMENDS** Petitioner's

5   Petition for Writ of Habeas Corpus be **DENIED**.

6   **II. FACTUAL BACKGROUND**

7   The following facts are taken from the California Court of Appeal opinion in People v.

8   Garcia, et al., 168 Cal. App. 4th 261 (2008).  (Lodgment 8.)  The Court presumes these factual

9   determinations are correct pursuant to 28 U.S.C.A. § 2254(e)(1).  See Miller-El v. Cockrell, 537

10  U.S. 322, 240 (2003) ("Factual determinations by state courts are presumed correct absent clear and

11  convincing evidence to the contrary.").

12  Petitioner Geraldo Ojito (also known as Mist)[2] and Pedro Alexander Zepeda Garcia (also

13  known as Teddy) were the founding members of a tagging crew that evolved into a gang known as

14  "TNS" (Trust No Souls).  The victim, Manual Barajas (also known as Bonk or Manny) was a

15  member of a rival gang known as "ALS" (Another Logan Soldier).  (Lodgment 8 at 5.)

16  On the afternoon of August 11, 2002, Barajas stopped at the Gigante Market on 32nd Street

17  and National Avenue in southeast San Diego with his friends Jesus Garcia (also known as Cheech),

18  Jesus Flores (also known as Bozo) and Flores' four-year-old son Javier.  Barajas was approached by

19  Pedro Garcia in the grocery store parking lot.  The two had fought in the past and agreed to a one-

20  on-one fight in the alley behind the store.  Upon returning from the alley, Barajas bragged to his

21  friends that he had knocked Garcia out with one punch.  Flores pointed out that Barajas had blood on

22  his shirt, so after shopping the group took Barajas home to change his clothes.  (Id.)

23  While en route to Barajas' house, the group saw four to eight Hispanic males running out of

24  the alley behind the Gigante Market.  One of the men raised his hand and gestured towards Cheech's

25  truck.  In order to avoid bringing trouble back to Barajas' house, Cheech dropped Barajas off and

26

27  _____

28      [2] Like the California Court of Appeal, the Court refers to individuals by their nicknames used at trial for the sake of clarity.

1   parked his truck about two blocks away.  Cheech, Flores and Javier walked east on Logan Avenue

2   back towards Barajas' house to meet Barajas there.  Flores carried a car club (steering wheel locking

3   device) he took from the truck.  (Id.)

4          Meanwhile, the group of Hispanic males, which included Petitioner's older brother, Mario

5   Ojito (also known as Casper) also made their way over to Barajas' house.  (Id. at 6.)  The men

6   confronted Barajas' brother-in-law, Angel Zepeda, who was outside with his two-year-old daughter.

7   Casper said to Zepeda, "What's up mother-fucker?  You want some of this shit too, or what?"  At

8   some point, Barajas came outside and Casper turned his attention to him.  Pedro Garcia's cousin,

9   Favio Garcia (also known as Thief) rode up on a bicycle and joined in, yelling, "You jumped my

10  cousin, fool!"  Barajas responded, "I didn't jump nobody, fool.  I beat his ass."  Thief pulled out a

11  gun and attempted to shoot Barajas, but the gun did not fire.  He attempted to shoot Barajas a second

12  time, but again the gun did not fire.  (Id.)

13         Soon thereafter, Casper, Thief and the others left Barajas' house, leaving Barajas outside.

14  Barajas then reconvened with Cheech, Flores and Javier on Logan Avenue.  The group turned to

15  walk back toward Cheech's truck while Barajas recounted his confrontation with Casper and Thief.

16  However, before they reached the truck, the group was stopped by Pedro Garcia and Petitioner

17  Geraldo Ojito.  Garcia held a bloodstained shirt over his right temple and looked dazed from the

18  fight at the grocery store.  Flores brandished the car club and told them to "back the fuck up"

19  because his son was with him.  (Id.)

20         Moments later, Garcia and Ojito were joined by Casper, Yovani Pineda, and Ojito's younger

21  brother, Victor Rodriguez.  Ojito, Casper and Garcia accused Flores, Cheech and Barajas of

22  attacking Garcia at the Gigante Market.  Cheech and Flores denied attacking Garcia, and told him to

23  "take an ass whooping like a man."  Garcia started to pull out a gun, but Cheech yelled at him to

24  "put that thing away."  As the confrontation escalated, Casper approached Flores, standing almost

25  chest-to-chest with him.  Flores told Casper, "Back the fuck up off me.  Don't you see my son next

26  to me?"  Ojito leaned in and whispered something to Garcia, then turned to Barajas and told him he

27  had "better run."  Pineda later told investigators that Ojito did most of the talking at the scene.  (Id.)

28         As Barajas turned to run away, Garcia took a handgun from his backpack and fired at him.

1   Ojito and Garcia chased Barajas into a nearby yard, and Garcia fired several more shots.  Barajas

2   sustained three gunshot wounds and ultimately died from his injuries.  (Id. at 7.)   After the shooting,

3   Garcia, Ojito and Pineda ran to Pineda's car and drove away from the scene.  While in the car,

4   Garcia gave the gun to Ojito.  As they neared Pineda's house, police officers spotted the car and

5   began to pursue them.  When Pineda finally stopped the car, Ojito jumped out and ran away with the

6   gun.  (Id. at 6.)

7       Police arrested Garcia and Pineda in front of Pineda's house; however, they were unable

8   apprehend Ojito.  (Id. at 7.)  Six weeks later, Ojito was arrested following a standoff with the San

9   Diego Police Department SWAT team.  (Id.)

10                          **III. PROCEDURAL HISTORY**

11       Petitioner and his co-defendant Pedro Garcia were charged with murder in San Diego

12   Superior Court.  (Lodgment 3 at 1; ECF No. 9-1 at 1.)  In addition, Petitioner was charged as an

13   accessory to the crime.  (Id.)  The information alleged Petitioner and his brother Mario Ojito were

14   vicariously armed with a firearm and that Garcia personally discharged the firearm causing death.

15   (Id.)

16       Petitioner, Pedro Garcia and Mario Ojito were tried jointly in a jury trial.  On June 13, 2006,

17   the jury found Petitioner and Garcia guilty of first degree murder, found Petitioner guilty as an

18   accessory to the crime and found true the special allegations.  (Lodgment 3 at 2; ECF No. 9-1 at 1.)

19   Mario Ojito was acquitted.  (Id.)  On November 2, 2006, Petitioner was sentenced to a term of

20   twenty-five years to life in state prison.  (Id.; Lodgment 2, vol. 26.)

21       On November 19, 2007,  Petitioner filed a direct appeal in the California Court of Appeal,

22   Fourth Appellate District, Division One.  (Lodgment 5.)  Petitioner argued: (1) he was denied a fair

23   trial and due process of law by the admission of gang evidence; (2) the joint trial with Defendant

24   Garcia denied him his right to due process; (3) the trial court prejudicially erred in admitting

25   evidence of his standoff with the San Diego Police Department SWAT team; (4) the admission of

26   evidence of the wila notes violated the California Code of Evidence and the Sixth Amendment

27   Confrontation Clause; (5) the cumulative impact of the trial court's errors violated his right to due

28   process; and (6) there was insufficient evidence to support the aiding and abetting premeditated

1    murder conviction.  (See Lodgment 3; Lodgment 6.)  On November 14, 2008, the Court of Appeal

2    affirmed Petitioner's conviction.  (Lodgment 8.)

3           On December 29, 2008, Petitioner appealed to the Supreme Court of California, raising the

4    same issues he did to the California Court of Appeal.  (Lodgment 9.)  The Court denied Petitioner's

5    appeal without comment on February 18, 2009.  (Lodgment 10.)  Petitioner filed the instant Petition

6    for Writ of Habeas Corpus in the United States District Court Southern District of California on

7    December 28, 2009.  (ECF No. 1.)  The Court now addresses the merits of Petitioner's Petition.

8                                    **IV. STANDARD OF REVIEW**

9           This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty

10   Act of 1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320 (1997).  Under AEDPA, a habeas

11   petition will not be granted with respect to any claim adjudicated on the merits by the state court

12   unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable

13   application of clearly established federal law; or (2) resulted in a decision that was based on an

14   unreasonable determination of the facts in light of the evidence presented at the state court

15   proceeding.  28 U.S.C. § 2254(d); Early v. Packer, 537 U.S. 3, 8 (2002).  In deciding a state

16   prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the

17   state court's determination; rather, the court applies an extraordinarily deferential review, inquiring

18   only whether the state court's decision was objectively unreasonable.  Yarborough v. Gentry, 540

19   U.S. 1, 4 (2003); Medina v. Hornung, 386 F.3d 872, 877 (9th Cir. 2004).

20          A federal habeas court may grant relief under the "contrary to" clause if the state court

21   applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a

22   case differently than the Supreme Court on a set of materially indistinguishable facts.  Bell v. Cone,

23   535 U.S. 685, 694 (2002).  The court may grant relief under the "unreasonable application" clause if

24   the state court correctly identified the governing legal principle from Supreme Court decisions, but

25   unreasonably applied those decisions to the facts of a particular case.  Id.  Additionally, the

26   "unreasonable application" clause requires that the state court decision be more than incorrect or

27   erroneous; to warrant habeas relief, the state court's application of clearly established federal law

28   must be "objectively unreasonable."  Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

1    Where a petitioner alleges a state court decision is based upon an unreasonable determination

2    of the facts in light of the evidence presented in state court, he must demonstrate that the factual

3    findings upon which the state court's adjudication rests are objectively unreasonable.  Miller-El v.

4    Cockrell, 537 U.S. 322, 340 (2003).  A state court's factual determination is unreasonable if it is "so

5    clearly incorrect that it would not be debatable among reasonable jurists."  Jeffries v. Wood, 114

6    F.3d 1484, 1500 (9th Cir. 1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320

7    (1997).  Moreover, the state court's factual determinations are presumed correct, and Petitioner

8    carries the burden of rebutting this presumption with "clear and convincing evidence."  28 U.S.C.A.

9    § 2254(e)(1).

10    To determine whether habeas relief is available under §2254(d), the Court "looks through" to

11    the last reasoned state court decision as the basis for its analysis.  Ylst v. Nunnemaker, 501 U.S. 797,

12    801-06 (1991).  If the dispositive state court order does not "furnish a basis for its reasoning,"

13    federal habeas courts must conduct an independent review of the record to determine whether the

14    state court's decision is contrary to, or an unreasonable application of, clearly established Supreme

15    Court law.  See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by

16    Andrade, 538 U.S. at 75-76); accord Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

17    **V. DISCUSSION**

18    Petitioner raises the following grounds for relief: (1) the trial court's admission of gang

19    evidence denied him a fair trial in violation of his right to due process; (2) the trial court

20    "prejudicially erred" in admitting evidence of Petitioner's standoff with the San Diego Police

21    Department SWAT team; (3) Petitioner's conviction for aiding and abetting premeditated murder

22    was not supported by sufficient evidence; (4) Petitioner's joint trial with co-defendant Garcia

23    violated his Sixth Amendment right to confront and cross-examine witnesses and denied him a fair

24    trial; (5) the trial court's admission of evidence of "wila" notes violated state law and his Sixth

25    Amendment right to confront and cross-examine witnesses; and (6) the trial court's cumulative

26    errors violated due process.  (Id. at 7-14.)

27    Respondent argues Petitioner's claims should be denied because the state court's decision

28    was not contrary to, or an unreasonable application of clearly established federal law, and the court

1   did not rely on unreasonable factual determinations of the evidence.  (ECF No. 9 at 2.)

2   **A.      Ground One: Admission of Gang Evidence**

3          In his first ground for relief, Petitioner claims the trial court's admission of inflammatory

4   testimony from gang experts and fellow gang members denied him a fair trial in violation of his

5   right to due process.  (ECF No. 1 at 7.)  Respondent argues the California Court of Appeal

6   reasonably rejected this claim on direct appeal.  (See ECF No. 9-1 at 18.)

7          **1.      Background**

8           On February 15, 2005, Petitioner brought a motion in limine to exclude gang evidence as

9   irrelevant and unduly prejudicial under California Evidence Code Sections 350 and 352.  (Lodgment

10  1, vol. 3 at 487-89.)  Since Petitioner was not charged with a gang enhancement, he claimed any

11  association with a gang would be unduly prejudicial.  (Id.)  Rather, Petitioner argued gang evidence

12  would mislead the jury to believe gang membership was a material issue in the case.  (Id.)  The court

13  denied Petitioner's motion.  (Id. at 409-13.)  Thus, the prosecution presented expert witness

14  testimony regarding gang culture in general, as well as evidence regarding the membership and

15  activities of ALS and TNS.  (See Lodgment 8 at 9.)  At the conclusion of the trial, however, the

16  court instructed jurors that evidence of gang membership alone cannot serve as proof of aiding and

17  abetting.  (Lodgment 1, vol. 2 at 295.)

18         **2.      State Court Decision**

19         Petitioner challenged the trial court's admission of gang evidence on direct appeal, arguing

20  any probative value of the evidence was greatly outweighed by the prejudicial impact of

21  inflammatory gang evidence.  (Lodgment 3 at 15-43.)  The California Supreme Court denied

22  Petitioner's appeal without comment.  (Lodgment 10.)  Therefore, this Court must "look through"

23  that denial to the California Court of Appeal's opinion denying his claim as the basis for its analysis.

24  Yslt, 501 U.S. at 803.

25         Upon a thorough discussion of the evidence presented at trial, including photographs and

26  expert testimony, the Court of Appeal found the gang evidence was relevant to the issues before the

27  court.  The Court of Appeal stated:

28

We conclude the trial court acted well within its discretion in admitting the gang evidence in question because the evidence is relevant to Ojito's intent and motive to aid and abet Barajas's murder, or an offense of which Barajas's murder was a natural and probable consequence.  The gang evidence was relevant to show the relationship between Ojito and Garcia and the nature of the organization they had strived to create.  The various photographs of TNS members flashing their 211 sign and brandishing guns showed they undertook to 'elevate' the status of TNS from tagging crew to a gang patterned after established multigenerational Logan gangs -- i.e., that they intended TNS to be perceived as a gang rather than a tagging crew.  In light of this evidence of their gang mentality, the expert testimony about gang culture -- particularly the testimony about the obligation of gang members to back up fellow gang members -- was relevant to prove Ojito's intent to aid Garcia in avenging Garcia's beating.  The jury could reasonably infer from that evidence that Ojito encouraged Garcia to confront and assault Barajas before they encountered him on the 3100 block of Logan Avenue, regardless of whether Garcia's own motive to shoot Barajas was gang related or strictly personal.

(Lodgment 8 at 10.)

The Court of Appeal also considered the prejudicial impact of the gang evidence and reasoned that the jury's acquittal of Petitioner's brother, Mario Ojito (also known as Casper), indicated the jury did not convict on gang evidence alone.  (Id.)  Specifically, the Court stated:

Casper's acquittal shows the gang evidence did not have the prejudicial effect of causing the jury to convict solely because of gang affiliation.  The acquittal indicates the jury followed the court's instruction that gang membership alone could not serve as proof of aiding and abetting, assessed each defendant's guilt and innocence on an individual basis, and properly based its determinations on the evidence regarding each defendant's conduct at the scene of and after the shooting.

(Id.)  The Court of Appeal concluded the trial court did not exceed the bounds of reason in ruling the probative value of the gang evidence outweighed the prejudicial effect.  Therefore, the Court rejected Petitioner's contention that the admission of gang evidence denied him a fair trial and due process of law.  (Id.)

### 3.    **Discussion**

A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Habeas relief is not available for an alleged error in the interpretation or application of state law.  Id. at 67; Oxborrow v. Eikenberry, 877 F.2d 1395, 1400 (9th Cir.1989) ("errors of state law do not concern us unless they rise to the level of a constitutional

1   violation”).

2        Therefore, a “state court’s procedural or evidentiary ruling is not subject to federal habeas

3   review unless the ruling violates federal law, either by infringing upon a specific federal

4   constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial

5   guaranteed by due process.”  <u>Walters v. Maass</u>, 45 F.3d 1355, 1357 (9th Cir. 1995) (citing <u>Pulley v.</u>

6   <u>Harris</u>, 465 U.S. 37, 41 (1984)).  A federal court cannot disturb a state court’s procedural or

7   evidentiary ruling on due process grounds unless the decision was so arbitrary or prejudicial that it

8   rendered the trial fundamentally unfair.  <u>Id.</u> (citing <u>Colley v. Sumner</u>, 784 F.2d 984, 990 (9th Cir.

9   1986), <u>cert. denied</u>, 479 U.S. 839 (1986)).

10        Petitioner fails to demonstrate the admission of gang evidence was so arbitrary or prejudicial

11   that it rendered the trial fundamentally unfair in violation of due process.  Under Ninth Circuit

12   authority, the admission of evidence renders a trial fundamentally unfair “[o]nly if there are *no*

13   permissible inferences the jury may draw from the evidence.”  <u>Jammal v. Van de Kamp</u>, 926 F.2d

14   918, 920 (9th Cir. 1991) (emphasis in original).  Here, as explained by the California Court of

15   Appeal, the gang evidence was relevant to Petitioner’s intent and motive to aid and abet in Barajas’

16   murder.  (Lodgment 8 at 10.)  Given their close relationship as founding members of the TNS gang,

17   a jury could reasonably conclude Petitioner intended to help Garcia seek revenge against Barajas

18   and other members of the ALS gang for the incident at the grocery store earlier in the day.

19        Moreover, the record indicates that any undue prejudice stemming from such evidence was

20   sufficiently ameliorated by the trial court’s instruction that gang membership alone “cannot serve as

21   proof of intent, or of the facilitation, advice, aid, promotion, encouragement, or instigation needed to

22   establish aiding and abetting.”  (Lodgment 1, vol. 2 at 295.)  In particular, the jury’s acquittal of

23   Mario Ojito demonstrates the jurors heeded the court’s instruction and did not rely on evidence of

24   gang membership alone in reaching a verdict.  <u>See</u> <u>Aguilar v. Alexander</u>, 125 F.3d 815, 820 (9th Cir.

25   1997) (“Juries are presumed to follow the court’s instructions.”).

26        Accordingly, the Court concludes that the state court’s decision on this claim was neither

27   contrary to, nor involved an unreasonable application of, clearly established federal law, and was not

28   based on an unreasonable determination of the facts in light of the evidence presented in the state

1  courts.  Based thereon, the Court **RECOMMENDS** habeas relief as to this claim be **DENIED**.

2  **B.      Ground Two: Admission of Evidence of Standoff and Arrest**

3        Petitioner claims the trial court "prejudicially erred" in admitting evidence of his standoff

4  with the San Diego Police Department SWAT team and subsequent arrest.  (ECF No. 1 at 9.)

5  Respondent argues Petitioner's claim does not raise a federal question and therefore fails to invoke

6  federal habeas jurisdiction.  (ECF No. 9-1 at 20.)

7        **1.      Background**

8        Petitioner also brought a motion in limine to exclude evidence of the circumstances

9  surrounding his arrest as irrelevant and unduly prejudicial under California Evidence Code Sections

10 350 and 352.  (Lodgment 1, vol. 3 at 410, 495-96; Lodgment 2, vol. 2 at 63-74.)  Petitioner claimed

11 that at the time of his arrest, he "was wanted for his participation in crimes where his role was far

12 more significant" than in this case.  (Id. at 496.)  Thus, Petitioner argued the jury could wrongly

13 infer that any alleged "consciousness of guilt" related to this case alone.  (Id.)  In its opposition to

14 Petitioner's motion, the prosecution argued the standoff with the San Diego Police Department

15 SWAT team demonstrated Petitioner's "consciousness of guilt" as to all crimes.  (Lodgment 2, vol.

16 2 at 67.)  On April 13, 2006, the trial court denied Petitioner's motion.  (Lodgment 1, vol. 3 at 410;

17 Lodgment 2, vol. 2 at 73-74.)

18       **2.      State Court Decision**

19       Petitioner raised this claim for relief on direct appeal.  (Lodgment 3 at 56-61.)  Because the

20 California Supreme Court denied Petitioner's appeal without comment (Lodgment 10), this Court

21 must "look through" to the California Court of Appeal's opinion as the basis for its analysis.  Yslt,

22 501 U.S. at 803.

23       The Court of Appeal stated it was not aware of California authority addressing whether

24 evidence of consciousness of guilt should be excluded as unduly prejudicial when the defendant has

25 committed a separate offense, of which the jury is unaware, and the evidence could relate to either

26 the undisclosed offense or the offense at issue in the trial.  (Lodgment 8 at 13.)  After a lengthy

27 discussion of authority in other jurisdictions, the court stated:

28

1  We agree with the reasoning of these out-of-state decisions, particularly the reasoning
2  that a defendant who has committed multiple offenses should not enjoy the benefit of
   the exclusion of relevant incriminating evidence that would be admissible against a
3  'neophyte' who has committed only one offense.  We conclude the court did not
   abuse its discretion in allowing the evidence of Ojito's SWAT standoff as probative
4  of his consciousness of guilt.  Although it is unnecessary to reach the issue, we
   further conclude that in light evidence of Ojito's actions immediately before and
5  during the shooting of Barajas, and the evidence of his flight and disposition of the
   murder weapon immediately following the shooting, it is not reasonably probable that
6  exclusion of the SWAT standoff evidence would have resulted in a more favorable
   verdict for Ojito on the murder charge.  Accordingly, any error in the admission of
   the evidence was harmless.

7  (Id.)

8  **3.    Discussion**

9       A federal court "shall entertain an application for a writ of habeas corpus in behalf of a

10  person in custody pursuant to the judgment of a State court only on the ground he is in custody in

11  violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); Estelle v.

12  McGuire, 502 U.S. 62, 67-68 (1991).  Habeas relief is not available for an alleged error in the

13  interpretation or application of state law.  Id. at 67; Oxborrow v. Eikenberry, 877 F.2d 1395, 1400

14  (9th Cir.1989) ("errors of state law do not concern us unless they rise to the level of a constitutional

15  violation").

16       Here, Petitioner claims the California Court of Appeal erroneously applied out-of-state

17  authority over conflicting California law.  (ECF No. 1 at 9.)  Thus, Petitioner argues habeas relief

18  should be granted to resolve the alleged conflict between California and out-of-state law.  (Id.)

19  However, the state court's application of California law, even if erroneous, is grounds for federal

20  habeas relief only if it rises to the level of a constitutional violation.  Oxborrow, 877 F.2d at 1400.

21  Because Petitioner does not argue the trial court's admission of evidence of his standoff with the San

22  Diego Police Department SWAT team and subsequent arrest violated his constitutional rights, the

23  Court finds Petitioner fails to state a cognizable claim for federal habeas relief.  Accordingly, the

24  Court **RECOMMENDS** this claim be **DENIED**.

25  **C.    Ground Three: Insufficient Evidence**

26       Petitioner contends his right to due process was violated because there was insufficient

27  evidence to support his conviction for aiding and abetting premeditated murder.  (ECF No. 1 at 10.)

28  While Petitioner concedes he was at the scene of the crime, he argues there was no evidence he

1  encouraged or assisted Garcia in Barajas' murder.  (Id.)  Respondent argues the state court

2  reasonably rejected this claim, concluding a rational trier of fact could have found Petitioner guilty

3  beyond a reasonable doubt.  (ECF No. 9-1 at 22.)

4      **1.**    **State Court Decision**

5      Petitioner challenged the sufficiency of the evidence supporting his conviction for aiding and

6  abetting murder on direct appeal.  (Lodgment 6 at 1-6.)  According to Petitioner, the prosecution

7  secured a conviction by holding him vicariously responsible for the acts of his fellow gang members.

8  (Id.)  The California Supreme Court denied Petitioner's appeal without comment.  (Lodgment 10.)

9  Therefore, this Court must "look through" that denial to the California Court of Appeal's opinion

10  denying his claim as the basis for its analysis.  Yslt, 501 U.S. at 803.

11      The Court of Appeal held Petitioner's conviction as an aider and abettor was supported by

12  substantial evidence.  (Lodgment 8 at 8.)  Specifically, the appellate court stated the evidence of the

13  confrontation at Barajas' house showed "that shortly after his fight with Barajas [at the grocery

14  store], Garcia communicated his version of the fight to friends and relatives (e.g., Thief) who

15  immediately embarked on a quest to find Barajas to avenge Garcia's beating."  (Id.)  The court

16  determined "the jury could reasonably conclude that the intent of the group seeking Barajas,

17  including [Petitioner], was to murder him or cause him great bodily harm."  (Id.)  Petitioner's intent

18  was "further supported by evidence that [Petitioner] and Garcia were founding members of the gang

19  TNS, and evidence regarding gang culture."  (Id.)

20      In rejecting this claim, the appellate court also relied upon evidence of Petitioner's presence

21  and actions at the scene of the crime, stating:

22  > The testimony of Pineda and other witnesses to the shooting of Barajas supports
23  > findings that Ojito did most of the talking in the confrontation leading up to the
   > shooting, was aware Garcia had a gun in his backpack before the shooting,
   > whispered something to Garcia and joined with Garcia in telling Barajas he had
24  > better run seconds before the shooting began, and ran after Barajas with Garcia as
   > Garcia repeatedly shot Barajas.  Based on this evidence alone, the jury could
25  > reasonably find that Ojito, with the requisite state of mind for criminal liability,
   > encouraged Garcia in the shooting of Barajas and therefore is guilty of Barajas's
26  > murder as an aider and abettor.

27  (Id.)  Finally, the court noted Petitioner's conduct after the shooting further supported his conviction

28  for aiding and abetting in Barajas' murder.  The evidence showed Petitioner fled the scene with

1    Garcia, disposed of the murder weapon and evaded arrest.  (Id.)  Based on the record as a whole, the

2    Court of Appeal concluded Petitioner's conviction was supported by substantial evidence.  (Id.)

3        **2.    Discussion**

4        The Due Process Clause "protects the accused against conviction except upon proof beyond

5    a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re

6    Winship, 397 U.S. 358, 364 (1970).  Thus, a state prisoner who alleges the evidence introduced at

7    trial was insufficient to support the findings of the trier of fact states a cognizable federal habeas

8    claim.  Herrera v. Collins, 506 U.S. 390, 402 (1993).  In reviewing an insufficient evidence claim,

9    federal courts must determine "whether, after viewing the evidence in the light most favorable to the

10   prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a

11   reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).  The

12   Jackson standard "gives full play to the responsibility of the trier of fact to fairly resolve conflicts in

13   the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate

14   facts.  Id.  In order to establish sufficient evidence, the prosecution need not affirmatively "rule out

15   every hypothesis except that of guilt."  Id. at 326.  Even where evidence is "almost entirely

16   circumstantial and relatively weak," it may be sufficient to support a conviction.  Jones v. Wood,

17   207 F.3d 557, 563 (9th Cir. 2000).

18       Moreover, a federal habeas court must apply the Jackson standard with an additional layer of

19   deference.  Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  Generally, a federal habeas court

20   must ask whether the operative state court decision reflected an unreasonable application of Jackson

21   to the facts of the case.  Id. at 1275 (quoting 28 U.S.C. § 2254(d)).  Thus, if a state court affirms a

22   conviction under Jackson, the federal court must decide whether the state court's application of

23   Jackson was objectively unreasonable.  See McDaniel v. Brown, --- U.S. ---, 130 S.Ct. 665, 673

24   (2010) (citing Williams v. Taylor, 529 U.S. 362, 409 (2000)).

25       Here, the Court of Appeal reasonably concluded there was sufficient evidence to support the

26   jury's verdict convicting Petitioner of aiding and abetting in Barajas' murder.  In rejecting

27   Petitioner's claim, the state appellate court applied the standard set forth in People v. Jackson, 21

28   Cal. 4th 518, 528-29 (1993), a California Court of Appeal case that reflects the federal standard.

1   The state court's decision was neither an unreasonable application of clearly established federal law,

2   nor was it based on an unreasonable determination of the facts in this case.  Based on the

3   confrontation at Barajas' house and the expert testimony regarding gang culture, a reasonable trier of

4   fact could have found that Garcia's friends and relatives, including Petitioner, tracked down Barajas

5   to avenge Garcia's attack at the grocery store.  (See Lodgment 8 at 8.)  The testimony of Pineda and

6   other witnesses presented evidence that Petitioner did most of the talking at the scene.  (Id.)

7   Immediately prior to the shooting, Petitioner whispered to Garcia and told Barajas he had "better

8   run."  (Id.)  Based on this evidence alone, a reasonable trier of fact could have found Petitioner

9   encouraged Garcia to shoot Barajas.  Finally, a reasonable trier of fact could have found Petitioner's

10   conduct after the crime supported a conviction for aiding and abetting murder.  The evidence

11   showed Petitioner fled the scene with Garcia, disposed of the murder weapon and evaded arrest.

12   (Id.)

13        In light of the record as a whole, the Court concludes the state court's determination that

14   Petitioner's conviction was supported by substantial evidence was neither contrary to, nor involved

15   an unreasonable application of, clearly established federal law, and was not based on an

16   unreasonable determination of the facts in light of the evidence presented in the state courts.

17   Accordingly, the Court **RECOMMENDS** habeas relief as to this claim be **DENIED**.

18   **D.    Ground Four: Joint Trial**

19        Petitioner argues his joint trial with Garcia violated the Sixth Amendment Confrontation

20   Clause because the court admitted evidence of Garcia's "highly inflammatory" out-of-court

21   statements that implicated Petitioner in Barajas' murder.  (ECF No. 1 at 11.)  Specifically, Petitioner

22   challenges the admission of the following evidence under the Bruton/Aranda rule[3]: (1) Garcia's out-

23   of-court statement to Pineda that he and Petitioner "went looking for" Barajas; (2) Garcia's letters

24

25        [3]  See Bruton v. United States, 391 U.S. 123, 135 (1968) (holding that "there are some contexts in which the risk
26   that the jury will not, or cannot, follow instructions [to assess the impact of a statement of a co-defendant as to that defendant
only and not any other co-defendants] is so great, and the consequences of failure so vital to the defendant, that the practical
27   and human limitations of the jury system cannot be ignored.") and People v. Aranda, 63 Cal.2d 518 (1965) (finding that
admission of confession implicating co-defendant in joint trial resulted in miscarriage of justice notwithstanding jury
28   instruction that the confession was admissible only against confessing defendant).

1   from prison, one of which stated, "see, I told you [Barajas] would pay;" and (3) photographs of a

2   book bearing the slogan "TNZ KILLZ." (Id. at 11-12.)  Given their close relationship as co-

3   founders of the TNS gang, Petitioner argues it was unreasonable to assume the jury could separate

4   the evidence against him from the evidence against Garcia during the course of an eight-week trial.

5   (Id.)  He claims the evidence against Garcia "must have had a substantial an injurious effect" on the

6   jury's perception of his case.  (Id. at 12.)

7        Respondent claims the state courts reasonably rejected his claim.  (ECF No. 9-1 at 25.)

8   Respondent argues none of the out-of-court statements implicated Petitioner's Sixth Amendment

9   right to confront Garcia because the statements were not made under circumstances that would lead

10   an objective witness to believe they would be available for use in a later trial.  (Id.)

### 1.    Background

12        Petitioner and Garcia both moved unsuccessfully for separate trials.  (See Lodgment 1, vol. 3

13   at 353, 370, 409; Lodgment 2, vol. 2 at 51, 108.)  At the conclusion of the trial, the court reminded

14   the jury of the charges against each defendant and instructed the jurors to consider the evidence as it

15   applied to each defendant separately.  (Lodgment 1, vol. 2 at 241.)  The trial court also instructed the

16   jury that evidence of one defendant's out-of-court statement may not be considered against any other

17   defendant.  (Id. at 257.)

### 2.    State Court Decision

19        Petitioner also raised this claim on direct appeal.  (Lodgment 3 at 48-53.)  Because the

20   California Supreme Court denied Petitioner's appeal without comment (Lodgment 10), this Court

21   must "look through" that denial to the California Court of Appeal's opinion denying his claim as the

22   basis for its analysis.  Yslt, 501 U.S. at 803.

23        The Court of Appeal found no abuse of discretion in the trial court's denial of Petitioner's

24   motion for severance and held the evidence admitted in the joint trial "did not result in gross

25   unfairness" amounting to a denial of Petitioner's right to due process.  (Lodgment 8 at 12.)  The

26   court rejected Petitioner's claim under Bruton v. United States, 391 U.S. 123 (1968), and its

27   California equivalent, People v. Aranda, 63 Cal.2d 518 (1965), stating:

28

When a joint trial results in the admission of an out-of-court statement by a codefendant that incriminates the defendant, the determination of whether the defendant was denied due process generally centers on whether the admission violated the defendant's rights under People v. Aranda (1965) 63 Cal.2d 518, and Bruton v. United States (1968) 391 U.S. 123.  In [People v. Lewis], the California Supreme Court explained that 'in Bruton, the United States Supreme Court held that the admission into evidence at a joint trial of a nontestifying codefendant's confession implicating the defendant violates the defendant's right to cross-examination guaranteed by the confrontation clause of the Sixth Amendment to the United States Constitution, even if the jury is instructed to disregard the confession in determining the guilt or innocence of the defendant.  The high court reasoned that although juries ordinarily can and will follow a judge's instructions to disregard inadmissible evidence, there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored.  Such a context is presented when the powerfully incriminating extra-judicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial.' [citations omitted.]

. . . Lewis noted that the United States Supreme Court similarly limited the scope of Bruton in Richardson v. Marsh (1987) 481 U.S. 200, which held that 'the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or existence.' [citations omitted.]

Because Aranda/Bruton error implicates a constitutional right, it is generally reviewed under the harmless beyond a reasonable doubt standard of Chapman v. California (1967) 386 U.S. 18. [citations omitted.]

(Id.)

Thus, the court noted that under United States Supreme Court law, "the Bruton rule (that the admission of a nontestifying defendant's confession implicating a codefendant in a joint trial violates the codefendant's rights under the confrontation clause, even with an appropriate limiting instruction) 'extends only to confessions that are not only 'powerfully incriminating' but also 'facially incriminating' of the nondeclarant.'" (Id.)

First, the Court of Appeal determined Garcia's letters did not facially incriminate Petitioner.  (Id.)  While the letters showed a "callous lack of remorse on the part of Garcia," they were redacted to exclude references to Petitioner and the jury was not informed that Petitioner was the letters' recipient.  (Id.)  Similarly, the court found that the photographs of the book bearing the notation "TNZ KILLZ" and the manila envelope bearing other gang insignias did not facially incriminate Petitioner.  (Id.)

Second, the court reviewed Garcia's statement to Pineda that he and Petitioner "went looking

1   for the guy that [Garcia] had a fight with." (Id.)  The court found the statement facially incriminated

2   Petitioner; however, the court concluded the statement was not "*powerfully incriminating*" because

3   it showed only that Petitioner and Garcia were "looking for Barajas."  (Id.)(emphasis in original.)

4   There was no "*direct* evidence that Ojito intended Barajas would be assaulted or murdered when

5   they found him."  (Id.)(emphasis in original.)  Moreover, the court concluded the evidence was

6   "merely cumulative of other overwhelming evidence that fellow gang members, friends, and

7   relatives of Garcia, including Ojito, embarked on a quest to find Barajas minutes after his fight with

8   Garcia."  (Id.)  Petitioner's conduct at the scene of the murder strongly supported the finding that

9   "he was accompanying Garcia on a mission to find Barajas."  (Id.)

10       To the extent the admission of Garcia's statement to Pineda constituted an Aranda/Bruton

11   error, the court held the error was harmless beyond a reasonable doubt.  (Id.)  Petitioner's conviction

12   was amply supported by evidence of his actions at the scene of the murder and his conduct following

13   the shooting.  Thus, the court was "satisfied beyond a reasonable doubt that the exclusion of

14   Garcia's out-of-court statement that he and [Petitioner] went looking for Barajas would not have

15   resulted in a more favorable outcome" for Petitioner.  (Id.)

16       **3.    Discussion**

17       The Sixth Amendment's Confrontation Clause provides that in all criminal prosecutions, the

18   accused shall have the right "to be confronted with the witnesses against him."  U.S. CONST. amend.

19   IV.  "The right of cross-examination is included in the right of an accused in a criminal case to

20   confront the witnesses against him."  Bruton v. United States, 391 U.S. 123, 126 (1968).

21   In Bruton v. United States, the United States Supreme Court held that a defendant is denied his Sixth

22   Amendment right to confrontation when a facially incriminating extrajudicial statement of a

23   nontestifying co-defendant is admitted in their joint trial, even where the court provides a limiting

24   instruction.  Id. at 135-36.  The Court recognized that "there are some contexts in which the risk that

25   the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to

26   the defendant, that the practical and human limitations of the jury system cannot be ignored."  Id.

27       The Supreme Court has limited the scope of Bruton in subsequent cases.  In Richardson v.

28   Marsh, 481 U.S. 200, 208 (1987), the Court held a redacted confession fell outside Bruton's scope

1    and was admissible in a joint trial with appropriate limiting instructions.  The Court reasoned that

2    "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's

3    confession with a proper limiting instruction when [] the confession is redacted to eliminate not only

4    the defendant's name, but any reference to his or her existence."  Id. at 211.  Therefore, when

5    presented with a statement that would violate Bruton, the prosecutor must hold separate trials, use

6    separate juries, abandon the use of the confession or redact the confession to significantly reduce or

7    eliminate the statements that implicate the defendant.  Gray v. Maryland, 523 U.S. 185, 192 (1998).

8           Here, the California Court of Appeal's decision was neither contrary to, nor an unreasonable

9    application of, the Bruton rule.  The record demonstrates that Garica's letter containing the

10   statement "See I told you he would pay" did not facially incriminate Petitioner because all

11   references to Petitioner were properly redacted and the jury was not informed of the letter's

12   recipient.  Similarly, the photographs of the book bearing the slogan "TNZ KILLZ" contained no

13   reference to Petitioner.  Though Garica's statement that he and Petitioner "went looking for" Barajas

14   facially incriminated Petitioner, the California Court of Appeal's conclusion that the statement did

15   not violate Petitioner's Sixth Amendment right to confront witnesses was not objectively

16   unreasonable.

17          However, to the extent that Petitioner could establish the admission of Garcia's statement

18   constituted a Confrontation Clause violation, or that the Court of Appeal's adjudication of his claim

19   was objectively unreasonable, he must also demonstrate that the error was not harmless in order to

20   be entitled to federal habeas relief.  "Confrontation Clause violations are subject to harmless error

21   analysis, because 'the Constitution entitles a criminal defendant to a fair trial, not a perfect one.'"

22   United States v. Nielsen, 371 F.3d 574, 581 (9th Cir. 2004) (quoting Delaware v. Van Arsdall, 475

23   U.S. 673, 680-81 (1986)).  "Evidence erroneously admitted in violation of the Confrontation Clause

24   must be shown harmless beyond a reasonable doubt, with courts considering the importance of the

25   evidence, whether the evidence was cumulative, the presence of corroborating evidence, and the

26   overall strength of the prosecution's case."  Id.  Habeas relief is not available "unless the error

27   resulted in 'substantial and injurious effect or influence in determining the jury's verdict,' . . . or

28   unless the judge 'is in grave doubt' about the harmlessness of the error."  Medina v. Hornung, 386

1   F.3d 872, 877 (9th Cir. 2004).

2        In this case, the Court of Appeal's conclusion that any <u>Aranda/Bruton</u> error was harmless

3   beyond a reasonable doubt was not contrary to, or an unreasonable application of, clearly established

4   federal law.  Petitioner's conviction was amply supported by evidence of his gang membership,

5   actions at the scene of the murder, as well as his attempt to flee the scene with the murder weapon

6   and evade arrest.  (Lodgment 8 at 12.)  Given the weight of the evidence presented, any prejudice

7   resulting from the admission of Garcia's statement that he and Petitioner "went looking for" the

8   victim was slight in comparison.  Accordingly, the state court's determination that the exclusion of

9   Garcia's out-of-court statement would not have resulted in a more favorable outcome at trial for

10  Petitioner was not objectively unreasonable.

11       Based thereon, the Court concludes that the state court's decision on this claim was neither

12  contrary to, nor involved an unreasonable application of, clearly established federal law, and was not

13  based on an unreasonable determination of the facts in light of the evidence presented in the state

14  courts.  Accordingly, the Court **RECOMMENDS** habeas relief as to this claim be **DENIED**.

15  **E.**      **Ground Five: Admission of Wila Notes**

16       Petitioner's fifth ground for relief challenges the trial court's admission of "Wila 1" and

17  "Wila 2," notes written by his cellmate, Miguel Thompson, a member of the Mexican Mafia.

18  Petitioner's arguments on this issue are unclear.  He seems to argue the admission of evidence

19  relating to the Mexican Mafia was "extremely prejudicial."  (ECF No. 1 at 14.)  To the extent

20  Petitioner argues the trial court erred in admitting gang evidence, the Court has ruled Petitioner is

21  not entitled to federal habeas relief on this ground.  Similarly, Petitioner seems to argue the

22  cumulative effect of the trial court's errors in admitting gang evidence denied him a fair trial in

23  violation of due process.  (ECF No. 1. at 13-14.)  The Court construes Petitioner's cumulative error

24  argument as a separate claim for habeas relief and addresses it below.

25       The Court has an obligation to "construe a pro se petition more liberally than it would

26  construe a petition drafted by counsel."  <u>Knaubert v. Goldsmith</u>, 791 F.2d 722, 729 (9th Cir. 1986).

27  Accordingly, the Court assumes Petitioner intends to raise the same issues regarding Wila 1 and

28  Wila 2 that he did on direct appeal – that is, that the admission of the notes violated the Sixth

1   Amendment Confrontation Clause and the California Code of Evidence.  (See  Lodgment 3 at 61-

2   76.)  Respondent argues the state courts reasonably rejected this claim.  (ECF No. 9-1 at 28.)

3           For the reasons set forth below, the Court finds that the state court's decision on this claim

4   was neither contrary to, nor involved an unreasonable application of, clearly established federal law,

5   and was not based on an unreasonable determination of the facts in light of the evidence presented in

6   the state courts.  Therefore, the Court **RECOMMENDS** habeas relief as to this claim be **DENIED**.

7       **1.    Background**

8           In January, 2005, police found Thompson's first note, Wila 1, when arresting Flores at his

9   home on unrelated drug charges.  (Id. at 113-14.)  It read, in part:

> Hey comrades.[4]  This is homie.  The homer Chore has specific instructions to relay
> to you dudes, and I ain't just bullshitting.  If anyone decides to show up to make
> any statements in this upcoming trial, I will most definitely reach out and not only
> try and whack each and every one of you dudes, but I will go even further to reach
> your families. . . . Watch out OR beware.

13  (Id. at 114-16; Lodgment 3 at 61-62.)

14          In March, 2005, Thompson sent the second note, Wila 2, to another inmate, Jesse Rubio, to

15  deliver to Petitioner (also known as Mist).  (Id.)  However, jail officials confiscated the note after

16  searching Rubio's clothing.  (Id.)  Wila 2 read, in part:

> Hey, Mist.  I don't know what's up, but check this out.  Do you remember that kite
> that I wrote to Chore, that fucken dude turned it in or something, because they are
> tripping in court that I'm doing or did you a favor on that.  They trying to give me
> 25-to-life for that shit.  So, if my attorney Gretchen goes over there, tell her
> somebody else wrote it, not us or me. . . .

20  (Lodgment 2, vol. 2 at 121-22; Lodgment 3 at 62.)

21          On April 13, 2006, the prosecution brought a motion in limine to introduce Wila 1 and Wila

22  2 as evidence of witness intimidation. (Lodgment 2, vol. 2 at 111-39.)  The prosecution alleged

23  Thompson wrote Wila 1 to threaten potential witnesses on Petitioner's behalf.  (Id.)  The prosecution

24  argued Wila 2 tied Petitioner to Wila 1, thereby implicating him in the witness intimidation.

25  (Lodgment 2, vol. 2 at 121.)  The prosecution further suggested the witness intimidation

---

[4] Maria Artega, a certified court interpreter, provided the alternate translations "hey, friends, pals, or buddies" for this salutation.  (Lodgment 2, vol. 20 at 3843.)

1   demonstrated Petitioner's consciousness of guilt.  (Lodgment 2, vol. 2 at 123.)  Conversely,

2   Petitioner argued there was no evidence he authorized or participated in the witness intimidation.

3   (Lodgment 2, vol. 2 at 130.)

4          On April 13, 2006, the trial court granted the prosecution's motion to introduce Wila 1 and

5   Wila 2 at trial.  (Lodgment 1, vol. 3 at 410; Lodgment 2, vol. 2 at 138-39.)  There is no indication in

6   the record that the trial court considered whether the notes were admissible as an exception to the

7   hearsay rule.  (See Lodgment 2, vol. 2 at 111-39; see also Lodgment 3 at 63.)  On the record, the

8   trial judge merely stated the probative value of the evidence was "just enormous" and that the notes

9   would be admitted.  (Lodgment 2, vol. 2 at 138.)

10         At trial, Steve Coneras, a Special Agent with the Office of Correctional Safety, testified as an

11  expert witness on Southern California gang membership and activity.  (Lodgment 2, vol. 19 at 3797-

12  831.)  During his direct examination, Special Agent Coneras read the contents of Wila 1 into

13  evidence and explained its meaning to the jury.  (Id.)  The notes were also translated for the jury by

14  a certified court interpreter, Maria Artega.  (Lodgment 2, vol. 20 at 3836-47.)  At the conclusion of

15  the trial, the court instructed the jury that evidence of witness intimidation "cannot prove guilt by

16  itself."  (Lodgment 1, vol. 2 at 272.)

17         **2.    State Court Decision**

18         Petitioner challenged the trial court's admission of Wila 1 and Wila 2 on direct appeal.

19  (Lodgment 3 at 61-76.)  He argued that "Wila 1 standing alone should have been excluded under the

20  general rule that evidence of an attempt by a third person to suppress evidence is inadmissible

21  against a defendant when the attempt did not occur in the defendant's presence and the defendant

22  did not authorize the attempt."  (Lodgment 8 at 15.)  As to Wila 2, which evidences Petitioner's

23  authorization of Wila 1, Petitioner argued it was inadmissible under California's hearsay rule.  (Id.)

24  Petitioner further argued the court's error in admitting Wila 2 violated his rights under the

25  Confrontation Clause of the Sixth Amendment.  (Id.)  Because the California Supreme Court denied

26  Petitioner's appeal without comment (Lodgment 10), this Court must "look through" that denial to

27  the California Court of Appeal's opinion denying his claim as the basis for its analysis.  Yslt, 501

28  U.S. at 803.

The Court of Appeal upheld the trial court's admission of both Wila 1 and Wila 2. (Lodgment 8 at 14-17.)  As to Wila 1, the court held it was admissible for the "nonhearsay purpose of showing why Flores and Cheech were afraid to testify."  (Lodgment 8 at 15.)  Specifically, the Court stated:

> We conclude the court acted within its discretion in admitting Wila 1, because it was relevant for the nonhearsay purpose of showing why Flores and Cheech were afraid to testify. [16] 'Evidence a witness is afraid to testify is relevant to the credibility of that witness and is therefore admissible. [Citations omitted.] Testimony a witness is fearful of retaliation similarly relates to that witness's credibility and is also admissible. [Citation omitted.] It is not necessary to show threats against the witness were made by the defendant personally, or the witness's fear of retaliation is directly linked to the defendant for the evidence to be admissible.' [Citations omitted.]
>
> Ojito contends Wila 1 was inadmissible under the following principles articulated in [People v. Williams (1997) 16 Cal.4th 153, 200-201]: 'Generally, evidence of the attempt of third persons to suppress testimony is inadmissible against a defendant where the effort did not occur in his presence. . . .
>
> Assuming these principles articulated in Williams should have controlled the court's exercise of discretion as to whether Wila 1 was admissible, we find no abuse of discretion because the evidence shows more than 'mere opportunity' on Ojito's part to authorize Wila 1.  The evidence showed that Ojito and Thompson shared a jail cell during the time Wila 1 was written; the note was delivered to a key witness in this case (Flores); and Wila 2, which concerns Wila 1, begins with Thompson's nonhearsay greeting, 'Hey Mist,' which shows the note was addressed to Ojito.  In light of the circumstantial evidence that Ojito authorized or even participated in the creation of Wila 1, the court reasonably could have admitted Wila 1 on the additional ground that, as evidence of an attempt to suppress evidence, it was relevant to show consciousness of guilt.
>
> _____
>
> [16]   Before ultimately deciding to testify, both Cheech and Flores were held in contempt of court and jailed for several days for refusing to testify out of fear of retaliation.

(Id. at 15) (internal citations and ellipsis omitted).

The Court of Appeal then considered whether Wila 2 contained inadmissible hearsay and, if so, whether its admission violated Petitioner's rights under the Sixth Amendment Confrontation Clause.  (Id. at 15-16.)  The court held the statements in Wila 2 constituted implied hearsay and were inadmissible under California law, stating:

> The implied hearsay assertions reasonably inferred from Wila 2 are that Thompson wrote Wila 1 as a favor to Ojito, and that Ojito requested, authorized or participated in the writing of Wila 1.  The People suggest that Wila 2 was admissible under the declaration against penal interest exception to the hearsay rule set forth in Evidence Code section 1230.  The problem with this suggestion is that '[t]he statement against interest exception allows admission only of those

1

2

3
> portions of the statement that are 'specifically disserving' to the declarant's interest.' [Citations and footnote omitted.] Thompson's statement in Wila 2 that he wrote 'that kite' to 'Chore' is disserving to his interest, but the statements implying that Ojito authorized or participated in the writing of Wila 1 are not; they are disserving to *Ojito's* penal interest.

4
(Id. at 16.)

5       However, to the extent the trial court's admission of Wila 2 violated the California Code of

6   Evidence, the Court of Appeal held the error was harmless.  (Id. at 17.)  Considering the other

7   evidence of Petitioner's consciousness of guilt, including the evidence of his flight and disposition

8   of the murder weapon, as well as the evidence of his actions at the scene of the crime, the court held

9   it was "not reasonably probable that the exclusion of Wila 1 or Wila 2 or both would have resulted

10  in a different outcome at trial."  (Id.)

11      In addition, the Court of Appeal held that to the extent the trial court erred in admitting Wila

12  2, "the error was under state law only, and did not implicate the Sixth Amendment's confrontation

13  clause."  (Id.)  Specifically, the court determined the statements in Wila 2 are not testimonial and

14  therefore do not implicate Petitioner's rights under the Confrontation Clause.  The court stated:

15

16

17

18

19

20
> [A]fter Davis [v. Washington, 547 U.S. 813 (2006)], the determination of whether the admission of a hearsay statement violates a defendant's rights under the confrontation clause turns on whether the statement is testimonial.  If the statement is testimonial, it must be excluded unless the declarant is unavailable as a witness and the defendant had a prior opportunity to cross-examine the declarant.  If the statement is not testimonial, it does not implicate the confrontation clause, and the issue is simply whether the statement is admissible under state law as an exception to the hearsay rule. . . . Thompson's implied hearsay statements in Wila 2 clearly were not testimonial. Consequently, their admission into evidence does not implicate Ojito's rights under the confrontation clause.

21  (Id. at 17.)

22      **3.     Discussion**

23      As stated above, the Court assumes Petitioner intends to raise the  same issues regarding

24  Wila 1 and Wila 2 that he did on direct appeal – that is, that the admission of the notes violated the

25  Sixth Amendment Confrontation Clause and the California Code of Evidence.  (See  Lodgment 3 at

26  61-76.)  The Court will address each argument in turn.

27      **a.      California Code of Evidence**

28      Petitioner seems to argue the notes contained inadmissible hearsay and therefore the

1  trial court's admission of the notes was contrary to the California Rules of Evidence.  (ECF No. 1 at

2  13.)

3  A federal court "shall entertain an application for a writ of habeas corpus in behalf of a

4  person in custody pursuant to the judgment of a State court only on the ground he is in custody in

5  violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); Estelle v.

6  McGuire, 502 U.S. 62, 67-68 (1991).  Habeas relief is not available for an alleged error in the

7  interpretation or application of state law.  Id. at 67; Oxborrow v. Eikenberry, 877 F.2d 1395, 1400

8  (9th Cir.1989) ("errors of state law do not concern us unless they rise to the level of a constitutional

9  violation").

10  Therefore, a "state court's procedural or evidentiary ruling is not subject to federal habeas

11  review unless the ruling violates federal law, either by infringing upon a specific federal

12  constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial

13  guaranteed by due process."  Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995) (citing Pulley v.

14  Harris, 465 U.S. 37, 41 (1984)).  A federal court cannot disturb a state court's procedural or

15  evidentiary ruling on due process grounds unless the decision was so arbitrary or prejudicial that it

16  rendered the trial fundamentally unfair.  Id. (citing Colley v. Sumner, 784 F.2d 984, 990 (9th Cir.

17  1986), cert. denied, 479 U.S. 839 (1986)).

18  Petitioner fails to demonstrate the admission of the wila notes was so arbitrary or prejudicial

19  that it rendered the trial fundamentally unfair in violation of due process.  Under Ninth Circuit

20  authority, the admission of evidence renders a trial fundamentally unfair "[o]nly if there are *no*

21  permissible inferences the jury may draw from the evidence."  Jammal v. Van de Kamp, 926 F.2d

22  918, 920 (9th Cir. 1991) (emphasis in original).  Here, as explained by the California Court of

23  Appeal, the notes were relevant for the non-hearsay purpose of establishing the credibility of Cheech

24  and Flores' testimony.  (Lodgment 8 at 15.)  Even if the trial court erred in admitting Wila 2, any

25  prejudice stemming from the note was outweighed by the substantial evidence of Petitioner's

26  participation in Barajas' murder.  Given the weight of the evidence against Petitioner, the admission

27  of Wila 1and Wila 2 did not have a substantial and injurious effect or influence on the jury's verdict.

28

1   Based thereon, the Court concludes that the state court's decision on this claim was neither

2   contrary to, nor involved an unreasonable application of, clearly established federal law, and was not

3   based on an unreasonable determination of the facts in light of the evidence presented in the state

4   courts.  Accordingly, the Court **RECOMMENDS** habeas relief be **DENIED** on this ground.

5   **b.     The Sixth Amendment's Confrontation Clause**

6   In addition, Petitioner seems to argue the trial court's error in admitting Wila 2 violated his

7   rights under the Confrontation Clause of the Sixth Amendment.[5]  (ECF No 1. at 13.)

8   The Confrontation Clause of the Sixth Amendment "guarantees the right of an accused in a

9   criminal prosecution to be confronted with the witnesses against him." Delaware v. Van Arsdall, 475

10   U.S. 673, 678 (1986) (internal quotations omitted).  The right of confrontation "means more than

11   being allowed to confront the witness physically." Davis v. Alaska, 415 U.S. 308, 315 (1974).  "The

12   main and essential purpose of confrontation is to secure the opportunity of cross examination." Id.

13   at 315-16.  Thus, the United State Supreme Court has held Confrontation Clause bars the admission

14   of out-of-court statements that are "testimonial" in nature, "unless the witness is unavailable, and

15   only where the defendant has had a prior opportunity to cross-examine." Crawford v. Washington,

16   541 U.S. 36, 59 (2004).

17   Following its decision in Crawford, the Supreme Court has elaborated on the distinction

18   between "testimonial" and "nontestimonial" statements.  In Davis v. Washington, the Court

19   observed:

20

21   Statements are nontestimonial when made in the course of police interrogation under
      circumstances objectively indicating that the primary purpose of the interrogation is
      to enable police assistance to meet an ongoing emergency.  They are testimonial

22   when the circumstances objectively indicate that there is no such ongoing
      emergency, and that the primary purpose of the interrogation is to establish or prove

23   past events potentially relevant to later criminal prosecution.

24

25   ───────────────

26   [5] The Court cannot ascertain from Petitioner's briefing whether he also argues the admission of Wila 1 violated his
      rights under the Confrontation Clause.  On direct appeal, Petitioner seemed to concede Wila 1 was properly admitted for the
      non-hearsay purpose of showing witnesses were afraid to testify.  (Lodgment 3 at 64.)  Petitioner then argued Wila 2 was

27   "the key to the admissibility of Wila 1," but Wila 2 was inadmissible under California's hearsay rule and the trial court's error
      in admitting it violated Petitioner's rights under the Sixth Amendment Confrontation Clause.  (Id. at 65.)  The Court assumes

28   Petitioner raises the same argument in his Petition.

1  547 U.S. 813, 822 (2006).  Most recently, in <u>Michigan v. Bryant</u>, -- U.S. --, 131 S.Ct. 1143, 1155

2  (2011), the Court emphasized that for Confrontation Clause purposes, statements must be evaluated

3  in the context of the circumstances in which they are made.  A statement is "testimonial" and

4  therefore subject to <u>Crawford</u> when the "primary purpose" of procuring the statement is to create "an

5  out-of-court substitute for trial testimony."  <u>Id.</u>  However, "[w]here no such primary purpose exists,

6  the admissibility of a statement is the concern of state and federal rules of evidence, not the

7  Confrontation Clause."  <u>Id.</u>

8         Here, the California Court of Appeal's conclusion that the admission of Wila 2 did not

9  violate the Sixth Amendment's Confrontation Clause was not contrary to, nor an unreasonable

10  application of, clearly established federal law.  The record indicates Wila 2 was not procured as an

11  "out-of-court substitute for trial testimony."  <u>See</u> <u>Bryant</u>, 131 S.Ct. at 1155.  Consequently, the Court

12  of Appeal's determination that Wila 2 was not testimonial and its admission into evidence did not

13  implicate Petitioner's Sixth Amendment right to confront witnesses was objectively reasonable.  <u>See</u>

14  <u>Giles v. California</u>, 544 U.S. 353, 376 (2008) ("[O]nly *testimonial* statements are excluded by the

15  Confrontation Clause.") (emphasis in original).

16         However, even assuming Petitioner could establish the admission of Wila 2 constituted a

17  Confrontation Clause violation, or that the Court of Appeal's adjudication of his claim was

18  objectively unreasonable, he must also demonstrate that the error was not harmless in order to be

19  entitled to federal habeas relief.  "Confrontation Clause violations are subject to harmless error

20  analysis."  <u>Nielsen</u>, 371 F.3d at 581.  "Evidence erroneously admitted in violation of the

21  Confrontation Clause must be shown harmless beyond a reasonable doubt, with courts considering

22  the importance of the evidence, whether the evidence was cumulative, the presence of corroborating

23  evidence, and the overall strength of the prosecution's case."  <u>Id.</u>  Habeas relief is not available

24  "unless the error resulted in 'substantial and injurious effect or influence in determining the jury's

25  verdict,' . . . or unless the judge 'is in grave doubt' about the harmlessness of the error."  <u>Medina</u>,

26  386 F.3d at 877.

27         In this case, Petitioner fails to demonstrate any error in the admission of Wila 2 "resulted in

28  'substantial and injurious effect or influence in determining the jury's verdict.'"  <u>Id.</u>  As previously

1   discussed, Petitioner's conviction was amply supported by evidence of his gang membership,

2   actions at the scene of the murder, as well as his attempt to flee the scene with the murder weapon

3   and evade arrest.  (Lodgment 8 at 12.)  Given the weight of the evidence presented, any prejudice

4   resulting from the admission of the wila notes was slight in comparison.  Accordingly, the Court

5   finds any error in the admission of the wila notes was harmless beyond a reasonable doubt.  Based

6   thereon, the Court **RECOMMENDS** habeas relief be **DENIED** on this ground.

7   **F.      Ground Six: Cumulative Error**

8           In his final claim for relief, Petitioner argues the combined prejudice of the trial court's

9   alleged errors was so overwhelming that he was denied a fair trial in violation of due process.  (ECF

10  No. 1 at 14.)  Respondent does not address this issue.  (See ECF No. 9-1.)

11          Petitioner raised this claim for relief on direct appeal.  (Lodgment 3 at 76.)  Because the

12  California Supreme Court denied Petitioner's appeal without comment (Lodgment 10), the Court

13  must "look through" to the California Court of Appeal's opinion as the basis for its analysis.  Yslt,

14  501 U.S. at 803.  The Court of Appeal rejected this claim, stating only: "Because we reject all of

15  [Petitioner's] claims of substantive error, we necessarily reject his claim of cumulative error."

16  (Lodgment 8 at 17 n. 18.)

17          The United States Supreme Court has clearly established that the combined effect of multiple

18  trial errors violates due process where it renders the resulting criminal trial fundamentally unfair.

19  Chambers v. Mississippi, 410 U.S. 284, 302-03 (1973); see also Montana v. Egelhoff, 518 U.S. 37,

20  53 (1996) (stating "evidentiary rulings can, in combination, rise to the level of a due process

21  violation"). "The cumulative effect of multiple errors can violate due process even where no single

22  error rises to the level of a constitutional violation or would independently warrant reversal."  Parle

23  v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007) (citing Chambers, 410 U.S. at 290 n. 3).  In

24  conducting cumulative error analysis, this Court must weigh the relative harm caused by the errors

25  that occurred during Petitioner's trial.  Id. at 927-28.  "[T]he fundamental question in determining

26  whether the combined effect of trial errors violated a defendant's due process rights is whether the

27  errors rendered the criminal defense far less persuasive . . . and thereby had a substantial and

28  injurious effect or influence on the jury's verdict."  Id. at 928 (internal quotations and citations

omitted.)

In this case, the Court of Appeal's decision on this issue was not contrary to, or an unreasonable application of clearly established federal law.  Both the Court of Appeal and this Court have found error only in the trial court's admission of Wila 2.  Nevertheless, as previously discussed, there was substantial evidence supporting Petitioner's conviction for aiding and abetting in Barajas' murder.  Based on the confrontations at the grocery store and Barajas' house, a reasonable trier of fact could have found Garcia's friends, including Petitioner, sought to track down Barajas to avenge Garcia's attack.  The testimony of Pineda and other witnesses evidenced that Petitioner did most of the talking at the scene.  Immediately prior to the shooting, Petitioner whispered to Garcia and told Barajas he had "better run."  In addition, a reasonable trier of fact could have found Petitioner's conduct after the shooting, including his attempt to dispose of the murder weapon and evade arrest, supported a conviction for aiding and abetting murder.  Given the strength of this evidence, the Court of Appeal's opinion rejecting Petitioner's claim for cumulative error was not objectively unreasonable.

Based thereon, the Court concludes that the state court's decision on this claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state courts.  Therefore, the Court RECOMMENDS habeas relief as to this claim be **DENIED**.

## VI. CONCLUSION

After thorough review of the record in this matter and based on the foregoing analysis, this Court recommends that the Petition for Writ of Habeas Corpus be **DENIED**.  This Proposed Findings of Fact and Recommendation for Disposition of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, the Honorable Jeffrey T. Miller, pursuant to the provision of 28 U.S.C. § 636(b)(1) (2007) and Local Rule 72.1(d).

IT IS HEREBY ORDERED that **no later than October 20, 2011**, any party may file and serve written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

1        IT IS FURTHER ORDERED that any reply to the objections shall be filed and served no

2   later than ten days after being served with the objections.  The parties are advised that failure to file

3   objections within the specified time may waive the right to raise those objections on appeal of the

4   Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

5        **IT IS SO ORDERED.**

6   DATED:  September 20, 2011

7

8   _____
    LOUISA S PORTER
    United States Magistrate Judge

9

10  cc:       The Honorable Jeffrey T. Miller
              All parties

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28